McKay and others *v.* Stowe and others.

*(Circuit Court, D. Massachusetts. June 22, 1883.)*

1. Patent — Reissue Invalid — Improvement in Machine for Nailing Shoe and Boot Soles.

Reissue, granted March 28, 1876, of the original patent granted to Gordon McKay, as assignee of himself and Hadley P. Fairfield, on October 13, 1874, for improvements in machines for nailing the soles of boots and shoes, was not intended to supply an omission or correct a mistake in the original patent, but is a deliberate attempt by the inventors to contradict the leading assertion most positively and unequivocally made by them in their first specification, and to enlarge their claim so as to cover a combination which omits the most ingenious and distinctive element of the combination originally patented, and the first, second, and third claims of such reissue cannot be upheld.

2. Same—Infringement.

The fourth claim of the reissue is not infringed by the machine of defendant, in which the selection of the nails to be driven is not made automatically according to the thickness of sole to be nailed, but is controlled by the direct intervening action of an attendant, interrupting the automatic action at such times as he chooses.

In Equity.

*E. Merwin* and *J. J. Storrow,* for plaintiffs.

*B. F. Thurston* and *J. E. Maynadier,* for defendants.

Before Gray and Lowell, JJ.

Gray, Justice. This is a bill in equity for the infringement of two patents for improvements in machines for nailing the soles of boots and

shoes.   The first patent was granted to Gordon McKay, as assignee of himself and Hadley P. Fairfield, on October 13, 1874, and was reissued on March 28, 1876, on an application filed March 13, 1876. The original specification describes, with the aid of accompanying drawings, a most complex and ingenious mechanism, the principal parts of which are (1) a nail-tube resting upon the sole, and which is raised or lowered according to the thickness of the stock; (2) a nail-driver; (3) a series of stationary vertical nail receptacles, varying in depth, and containing nails of various lengths; and (4) a nail-carrier, by which the nails are selected and transferred from the nail receptacles to the nail-tube.   "The mechanism for selecting from the nail receptacles a nail corresponding most nearly to the thickness of the material, and its operation," are described in great detail.

In the reissue the main body of the description is not substantially varied, although perhaps a little warped so as to give countenance to the remarkable changes at the beginning and end of the specification.   At the beginning of the original specification the inventors—

"Declare that the following, taken in connection with the drawings which accompany and form part of this specification, is a description of our invention sufficient to enable those skilled in the art to practice it.

"*The invention relates to the organization of that class of sole-nailing machines in which, the parts to be united being of varying thickness, each nail unites such parts as correspond in thickness to the length of such nail.*   Heretofore the nail [used] in *such* [nailing] machines has usually been cut in the machine to the length required by the thickness of the particular parts to be united by it, such nail[s] being sometimes cut from a continuous wire, and sometimes from a continuous or ribbon-like plate; but in the present invention the nails are formed of different lengths prior to entering the machine, and with or without heads, and are placed in *respective pockets or* [separate] receptacles attached to the machine, from which they are *automatically removed and* transferred to position to be driven, and *so that* the sole and upper are united by metal fastenings, each corresponding in length to the thickness of parts to be united by it.

"*Our invention consists, primarily, in the combination, with a nail-driving mechanism and a mechanism that automatically determines the position of the upper surface of the parts to be united, of a transfer mechanism, which selects a nail of proper length for the thickness of the parts to be united by it, and carries it into position to be driven.*"

The reissue omits the words printed above in italics, and inserts those printed in brackets, and substitutes for the last sentence above quoted the following:

"This invention consists, primarily, in the combination, in a nailing machine, and with its nail-tube and driver, of nail-receptacles—two or more— adapted to receive and support separate nails of different lengths, to be used in different portions of the stock, according to the length of nail required."

The original specification ends with three claims, the first and second of which (being the only ones material to this case) are as follows:

"We claim (1) the combination, with a nail-tube and nail-driver, of the nail-receptacles and mechanism, substantially as shown, for transferring the nail from the receptacles to position to be driven, all substantially as and for the purposes described; (2) the combination, with the nail-tube and nail-driver, of nail-receptacles and transferring mechanism, so constructed and arranged, and so operating, that the nails are selected in accordance with their respective lengths, and are transferred and positioned to unite parts corresponding ing in thickness to the length of the respective nails."

The reissue substitutes for these two claims the following four claims:

"We claim, (1) in a nailing-machine, the combination, with the nail-tube and driver, of nail-receptacles adapted to receive and support separate nails of different lengths; (2) a series of nail-receptacles adapted to sustain nails of different lengths, and with or without heads, in combination with a carrier to remove a nail from either of the receptacles to a position in line with the driver by which it is to be driven, and with a driver to drive the nail from the carrier; (3) a series of nail-receptacles adapted to sustain and guide separate nails of different lengths, in combination with a nail-tube and driver, and with mechanism to present the nails singly to the nail-tube in line with the driver, substantially as described; (4) the nail-tube and driver, and receptacles to contain separate nails of different lengths, in combination with mechanism adapted to select the nails to be driven, according to the thickness of the stock to be united, substantially as described."

The parts of the original patent, and of the reissue, above quoted, sufficiently show the wide and essential difference between the two. The original specification, at the very outset, declares that the invention primarily consists in the combination, with the other designated parts of the machine, of a transfer mechanism, which automatically selects, and carries into position to be driven, a nail of proper length for the thickness of the parts to be united. And both claims of that specification are equally limited; the second, by a full and explicit statement of this distinguishing characteristic; and the first, with equal clearness, and like legal effect, by the words of reference to the preceding description, "substantially as shown," and "all substantially as and for the purpose described." The specification of the reissue begins by ignoring and repudiating the leading declaration of the original specification, and by declaring that the invention primarily consists, not in the combination, with the nail-tube, nail-driver, and nail-receptacles, of the curious mechanism for selecting from the receptacles and carrying to the driver nails of different lengths, but in the mere combination, with the tube and driver, of the receptacles to hold nails of different sizes. And it undertakes to enlarge the claim accordingly. This is not a case of supplying an omission, or correcting a mistake, in the original patent. But it is a deliberate attempt by the inventors to contradict the leading assertion most positively and unequivocally made by them in their first specification, and to enlarge their claim so as to cover a combination which omits the most ingenious and distinctive element of the combination originally patented. To allow a claim to be so enlarged by a reissue, after the

lapse of **17** months, during all which time the inventors cannot have been ignorant of what was their real invention, or of what they had so explicitly declared it to be in the original patent, would be unreasonable and mischievous. In the defendants' machine, the selection of the nails to be driven is not made automatically, according to the thickness of the sole to be nailed; but it is controlled by the direct intervening action of an attendant, interrupting the automatic action of the machine at such times as he chooses.

The result is that the first, second, and third claims of the reissue cannot be upheld, and that the defendants have not infringed the fourth claim of the reissue. *Gage* v. *Herring*, 108 U. S. —; S. C. 2 Sup. Ct. Rep. 819.

For similar reasons the plaintiffs fail to show any infringement of the patent granted to Louis Goddu on May 18, 1875.

Bill dismissed. with costs.